IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| LARRY GENE MARTIN, JR., ) | Civil Action No. 4:05-2309-MBS-TER |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | REPORT AND RECOMMENDATION |
| AMY STACK, NURSING SUPERVISOR OF ) | |
| THE J. REUBEN LONG DETENTION ) | |
| CENTER, ) | |
| ) | |
| DEFENDANT. ) | |
| _____) | |

## I. PROCEDURAL BACKGROUND

The plaintiff, Larry Gene Martin, Jr., ("plaintiff" or "Martin") filed this action pro se on August 19, 2005, under 42 U.S.C. § 1983[1]. The plaintiff is an inmate within the J. Reuben Long Detention Center ("JRLDC"). The plaintiff has filed this lawsuit, pursuant to 42 U.S.C. § 1983, asserting that his constitutional rights were violated in that the defendant was deliberately indifferent to his medical needs. Specifically, plaintiff alleges that defendant failed to properly treat his dental problems between January and December 2004, while a pretrial detainee at JRLDC.

Defendant filed a notice of motion and motion for summary judgment on January 9, 2006. Because the plaintiff is proceeding pro se, he was then advised on January 12, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to defendant's motion for summary judgment with additional evidence or counter affidavits could result in the dismissal

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

of his complaint. Plaintiff filed a response to the motion for summary judgment on January 25, 2006.

## II.  DISCUSSION

### A.  ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges in his complaint that his constitutional rights were violated for the following reasons, quoted verbatim:

> I came to J. Reuben Long Detention Center Jan. 5, 2004. I started filling out request to see dentist in March of same year for needing to see dentist, my pain went away but came back and I started filling out request again in June 04, Aug. 04, Sep. 04. Finally I get to the dentist Sep. 9-04. I had 3 teeth pulled, but by then my bottom partial was broken and I was having severe pain from putting pressure on other teeth that had broken while I was here, the dentist told me to come back and he would get the rest. I came back and it got worst now that I had to chew, I filled out numerous request to get back to dentist. I was told repeatedly by Nurse Clark, Nurse Peggy, Nurse Connie there is nothing they could do once your on the list its up to Nursing Supervisor Amy Stack to assign who goes to dentist although I was given Ibuprohene [sic] twice a day, it did not stop the pain. I filled out complaint again. It took 57 days to get me back to dentist and I had my right eye tooth pulled. During which time I was in constant pain, I filled out another request and seen dentist again–Dec. 6 (33 days it took) Dec. 11 I was put back on Ibprohene [sic]. I also seen Amy Stack. She put me on the dental list herself 12-13-04. Now I had told them repeatedly of being in pain. Now it took them 147 days to get me back to Dentist, on April 1. I got tired of complaining and filled out grievance that was 115 days after being put on list, I was called up front on April 12-05. I told Deborah Hipp at that time it was not hurting because I was not eating [or] drinking anything at that time. Amy Stack was in the room at the time and comments it will be awhile to see the dentist it's a first come first serve basis. She was the one who put me on the list in December. That was not correct by what she said Dec. 24, 2004. A James Edwards came in to my cell and was put on dental list in Jan. and was sent once before me, and several weeks later they came back to take him again, now how is that first come first serve when I was here first. Miss Amy Stack assumes because I have already been to dentist several times that my needs are

> being met and that it doesn't warrant immediate attention. I have been left back here in pain for a total of 204 days without treatment. The last dentist I seen was DDS Endicott and he said it was 50/50 chance I will still loose two other eye tooth. I was told by other nurses its out of there hands when complaining. Amy Stack [k]new full well I needed dental care but took it upon herself to say who's needs needed to be met first. Now I still can't chew properly and my bottom partial is still broken and I still need dental work done. If these people would have acted the first time and when I first was complaining, my mouth would not be in the shape it is. Now I have teeth gone that I can never replace. Miss Amy Stack knowing full well my dental needs chose to ignore my pleas and took it upon herself. She deliberately assumed she knew more than me about my own pain.

(Complaint).

Plaintiff is requesting that the rest of his dental needs be met and monetary damages for pain and suffering. (Document # 1).

Defendant filed a motion for summary judgment arguing that she should be dismissed from the case because plaintiff's claim fails to establish any claim for relief for violation of his civil rights pursuant to 42 U.S.C. §1983.

### B.  STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material

fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### C.  LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has

> complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520 (1979). Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime. Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld. Bell, 441 U.S. at 538.

### D. MEDICAL INDIFFERENCE

As previously stated, plaintiff argues that he requested to see a dentist several times before he was seen. Specifically, plaintiff asserts that defendant controls the list of inmates who are scheduled for dental appointments and prohibited plaintiff from being able to revisit a dentist for approximately fifty-seven (57) days on one occasion and one hundred fifty-seven (157) days on another occasions for a total of over two hundred days.

Defendant argues that she responded to plaintiff's medical needs. Nurse Stack submitted her affidavit in which she attests that she is employed by the JRLDC as a nursing supervisor and is

familiar with the procedures used at JRLDC for handling dental requests. Stack attests that it has been her experience that a large number of detainees incarcerated at the facility have various types of dental complaints and that very few of the detainees housed at the JRLDC received professional care for their teeth prior to their incarceration, so many will voice complaints. Stack attests that at the time plaintiff was incarcerated at the JRLDC in January 2004, the dental policy was quite liberal, allowing inmates with any dental complaint to be added to the dental list, thus causing a backlog. Stack attests that this policy was subsequently changed in or around January 2005, to allow inmates on the dental list only in the event they were also suffering from a medical problem, such as abscess or fever. Stack contends that upon his arrival at JRLDC, plaintiff's teeth were in very poor condition due to years of dental neglect.

Stack attests that the JRLDC does not have a dentist on staff, but contracts with private dentists to provide services for the detainees. Stack states that when a detainee presents to them with a dental complaint, an examination is made and a painkiller, such as Ibuprofen, is administered to assist with any complaints of pain. At that point, Stack states that the detainee is placed on the dental list, if warranted, for further evaluation by a dentist. Stack attests that due to the relatively large amount of detainees complaining of dental problems, a visit to a dentist is necessarily on a first come, first serve basis. Stack states that it is difficult to schedule appointments with the contracted dentists due to their pre-existing schedules. However, Stack attests that if there is an extremely severe dental problem, emergency dental visits can be scheduled. Stack asserts that, generally, pain medication is administered for the less serious complaints until a dental appointment can be scheduled.

Stack attests that she reviewed plaintiff's medical records concerning his dental complaints.

Stack asserts that at plaintiff's initial medical screening on January 31, 2004, plaintiff listed that he had pre-existing dental problems. On June 5, 2004, plaintiff made a complaint of pain to his jaw due to teeth problems. Plaintiff was placed on the dental list on June 9, 2004. Stack attests that plaintiff did not complain of pain until September 6, 2004, and he was given 800mg of Motrin twice a day for the pain and was seen by the dentist on September 9, 2004. Stack asserts that the dentists' notes show that he ordered 600 mg of Motrin to be administered as necessary for pain and a soft diet for the next 48 hours and noted that teeth number 18, 19, and 20 were removed by him.

     Stack attests that plaintiff next complained on September 10, 2004, that he was in pain. On September 14, 2004, he was administered 800 mg of Ibuprofen due to complaints of pain and continued to be administered twice daily until he could be seen once again by the dentist. Plaintiff complained again on October 24, 2004, and Motrin continued to be administered for his dental pain. Stack attests that on November 4, 2004, he was once again seen by the dentist who ordered painkillers to be administered and noted that tooth number 6 had been removed. Stack attests that on November 9, 2004, plaintiff complained of more broken teeth causing pain and it was noted that plaintiff was to continue Motrin 600 mg. twice a day until seen by a dentist. It was also noted that plaintiff was currently on the dental list. Stack attests that on December 6, 2004, plaintiff was seen by the dentist who ordered that two Tylenol tabs be administered every four hours as needed for pain and noted that tooth number 1 was extracted. Stack attests that the nurse's notes on December 6, 2004, reveal that Tylenol was administered as prescribed by the doctor for three days and plaintiff was placed on a soft diet for a period of two days. On December 9, 2004, Stack attests that plaintiff had broken teeth, was administered painkillers, and it was verified that plaintiff was on the dental list. Stack attests that it was not until May 1, 2005, that plaintiff filled out another request to see a

dentist, claiming he had been on the list for 145 days without seeing a dentist. Stack states that in response, Nurse Robertson confirmed the next day that plaintiff was in fact on the dental list for May 2005. Stack attests that plaintiff was scheduled for an appointment on May 31, 2005, because numerous other inmates were on the dental list before plaintiff who had not yet seen a dentist at all.

Stack submitted an addendum to her affidavit on January 9, 2006. In this addendum, Stack attests that following plaintiff's request to see a dentist on December 9, 2004, members of the nursing staff and Stack attempted to make an appointment with their usual contracted dentist, Dr. Lee. However, Stack states that Dr. Lee only gave appointment times for later in January and March. Stack attests that other inmates were on the list to see Dr. Lee prior to plaintiff and were given those appointment times since plaintiff had just visited the dentist on December 6, 2004. Stack attests that she was later informed that Dr. Lee had undergone back surgery and she was required to find a new dentist to take inmate dental appointments. Stack attests that she contacted Dr. Endicott who informed her that he had appointments on May 3, 10, 17, and 31 available. Stack attests that plaintiff was scheduled for May 31, 2005, because several other inmates were in front of him on the list and, in contrast to Martin, those other inmates had yet to see a dentist at all." (Doc. #9-5). Copies of plaintiff's medical records/requests while at JRLDC were attached to defendant's memorandum.

Plaintiff submitted a statement on January 24, 2006. It appears it is the statement of Marty Ford[2] who contends that when he came to JRLDC, plaintiff had been to the dentist a couple of times but he watched plaintiff make complaint after complaint. Ford states that on December 2004, Nursing Supervisor Amy Stack came to see plaintiff at which time plaintiff was placed back on the dental list and Stack assigns who goes first. Ford states that he was aware that a James Edwards

---

[2] Signature is hard to read.

came to JRLDC in December 2004 and was not put on the dental list until January 2005 and was seen two times. Ford states that plaintiff told him that Amy Stack informed him when he was seen in medical in April 2005 that he was on the list but it was first come, first serve. Ford states that he saw plaintiff in pain and that some days he did not come out of his cell due to pain in his mouth. (Doc. #11).

Plaintiff also submitted the statement of James Johnson who states that plaintiff went to the dentist on September 9, 2004, and had three teeth extracted and needed to follow-up with the dentist to have more work performed. Johnson states that he heard plaintiff ask the nurses when they brought medicine to the cell for plaintiff what was taking so long to get back to see the dentist. Johnson states that he heard the nurses inform plaintiff that it was up to Nursing Supervisor Amy Stack "to get you to the dentist." Johnson states that plaintiff was in constant pain and even had his bottom partial broke and a "root had come out of his mouth before he had ever gotten to dentist." Johnson states that he is aware that plaintiff started filling out requests in March of 2004, and again in June and September 2004. Johnson states that he is aware that it took 57 days to get plaintiff back to the dentist. Johnson further states that he is aware that plaintiff was given pain medicine twice a day, after breakfast and after dinner, when plaintiff was in pain trying to chew his food. (Doc. #12).

In his response in opposition to summary judgment, plaintiff asserts the following:

> Also I did not say I was unable to revisit the dentist for approximately two hundred days. What I said was the total amount of time from my visit Sep. 9-2004 to Nov-4-2004 was 57 days I had been in constant pain and wanted help, now the other time that I was in extreme pain had to wait an extended period of time from Dec-6-2004 till May-3-2005 was 157 days giving me over 204 days I was in constant pain and not being able to chew properly and hurt everytime I ate.

(Doc. # 12).

Plaintiff states that he had "my mouth abscest [sic] up several times.' (Doc. #12). Plaintiff asserts that he let Amy Stack know about it but she never came herself to check him from June 2004, until December 2004. Plaintiff asserts that Stack examined him in December 2004, and he had already seen the dentist several times by that point. Further, plaintiff asserts that Stack made notes about his condition when she had not even seen him. Plaintiff states that he was given Ibuprofen two times a day but it did not help with the pain. Plaintiff asserts that he was taking pills twice a day for about eleven months and he "could have had serious problems from the absces [sic] and could have died." (Doc. # 12, p. 5). In summary, plaintiff asserts that he was in constant pain for a total of 204 days and defendant never looked in his mouth until December 2004 after many requests. Plaintiff asserts that another inmate was seen before him after he was on the list first. Further, plaintiff asserts Stack made a false statement in that he was not seen by the dentist on May 31, 2005, but was seen on May 3, 2005.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976).[3] The Court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is

---

[3] Medical claims of a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. However, the inquiry as to whether officials were deliberately indifferent to serious medical needs is the same under both the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the Eighth Amendment. See Moss v. Dorriety, 2006 WL 1207770 (D.S.C. 2006);

> manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the Court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

In order to establish a prima facie case under the Eighth Amendment, plaintiff must show that, objectively assessed, he had a "sufficiently serious" medical need to require treatment. Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 104 (4th Cir. 1995) (citing cases). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' " Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting Monmouth Co. Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 450 U.S. 1041 (1981)).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise.");

12

Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal). Thus, even if the plaintiff were able to show that defendants' actions somehow constituted medical negligence or medical malpractice, these are not actionable under 42 U.S.C. § 1983.

In the present case, the plaintiff's allegations are brought against defendant for not timely responding to his request for medical attention due to dental problems. Plaintiff asserts that he was in such severe pain that he could not eat or chew on some days and was not able to come out of his cell at times due to the severe pain. Further, plaintiff asserts that he was told by defendant Stack that it was "first come, first serve" on the dental list and other people who were not on the list prior to him were seen first. Plaintiff asserts and submitted statements from other inmates who contend that an Inmate Edwards was not placed on the list until January 2005 and was seen on two occasions before plaintiff was seen again. In fact, defendant Stack admits that inmates who had not previously been seen were seen prior to defendant. Plaintiff had several teeth extracted and needed further dental treatment. Even though plaintiff was administered pain medication, plaintiff contends that the pain was still severe for over a hundred days. Defendant has not provided evidence to show that the inmate or inmates that were seen prior to plaintiff had a condition that was more serious or caused more pain than plaintiff's condition.

As stated, medical claims of pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. However, the inquiry as to whether officials were deliberately indifferent to serious medical needs is the same under both the Due

Process Clause of the Fourteenth Amendment and the cruel and unusual Punishment Clause of the Eighth Amendment. Estelle, supra. As the Court concluded in Moss v. Dorriety, 2006 WL 1207770 (D.S.C. 2006), deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment" (Internal cites omitted). Based on the evidence and arguments of the parties, there is an issue of fact as to whether or not defendant Stack intentionally delayed access to dental care for plaintiff while he was in pain. There is an issue of fact as to whether defendant's statement that dental treatment was provided on a "first come, first serve basis" was true or if defendant Stack simply decided who was going to be seen first delaying plaintiff's treatment resulting in the unnecessary and wanton infliction of pain. Further, plaintiff was only a pre-trial detainee at the time and has asserted that he was in such pain for over 157 days that he could not eat or chew at times, would not leave his cell on occasions due to the severity of the pain, had an abscess, and had repeatedly requested to see a dentist due to his severe pain. The undersigned concludes that there is an issue of fact as to whether or not the delay in plaintiff receiving dental treatment can be considered deliberate indifference. Thus, the undersigned recommends that defendant's motion for summary judgment be denied as it relates to the plaintiff's claims of medical indifference.

## II.  CONCLUSION

For the reasons set forth herein, it is RECOMMENDED that the defendant's motion for summary judgment (doc. #9) be DENIED.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

June 15, 2006
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" & 
## The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina 29503
